**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

D-1 ALEX KAFI, M.D.,

    Defendant.

Case No.: 17-20432
Hon. Victoria A. Roberts

_____

## DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)

By and through his undersigned counsel, Defendant Dr. Alex Kafi, files his instant Motion for Compassionate Release pursuant to 18 U.S.C. § 3582. In further support of his motion, Dr. Kafi submits the accompanying brief. The government rejected Defendant's administrative request for compassionate release such that Defendant has exhausted his administrative remedies.

# **TABLE OF CONTENTS**

QUESTION PRESENTED ................................................................3

INDEX OF AUTHORITIES ..............................................................4

BRIEF IN SUPPORT OF MOTION ................................................ 1

    I.    BACKGROUND FACTS ..................................................1

    II.    APPLICABLE LAW ..........................................................1

    III.    DISCUSSION AND ANALYSIS .......................................3

        A. EXHAUSTION OF REMEDIES .......................................3

        B. 'EXTRAORDINARY AND COMPELLING' CIRCUMSTANCES ...................................................................................3

        C. § 3553(a) Sentencing Factors ....................................... 10

CONCLUSION ................................................................................ 15

# **INDEX OF AUTHORITIES**

## **CASES**

*United States v. Colvin*, No. 19-179, 2020 WL 1613943 (D. Conn. Apr. 2, 2020).......... 10

*United States v. Jones*, __ F.3d __ 2020 WL 6817488 (6th Cir. Nov. 20, 2020) ............... 2

*United States v. Presley*, 547 F.3d 625 (6th Cir. 2008) ...................................................... 14

*United States v. White*, (E.D. Mich. May 20, 2020) ........................................................... 12

## **STATUTES**

18 U.S.C. § 3553(a) ................................................................................................................ 1

18 U.S.C. § 3582 .................................................................................................................... iv

18 U.S.C. § 3582(c)(1)(A) ..................................................................................................... 1

## **OTHER AUTHORITIES**

USSG § 1B1.13 ....................................................................................................................... 1

## **STATEMENT OF ISSUES**

I. Should this Court find that there are "extraordinary and compelling circumstances" under 18 U.S.C. § 3582 so as to order the release from custody of Defendant Dr. Kafi, a 72 year old inmate who suffers from medical conditions that render him highly susceptible to the deadly COVID-19 disease and where he is currently housed in a BOP medical facility with one of the highest rates of COVID-19 related inmate deaths and hundreds of confirmed cases?

# **STATEMENT OF CONTROLLING AUTHORITY**

18 U.S.C. §3582

## BRIEF IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582

### I. Background Facts

Defendant Dr. Alex Kafi is a 72-year Iranian-American doctor who is currently serving a 60-month sentence following his conviction on a single count of conspiracy to distribute a controlled substance. Dr. Kafi is currently housed at FMC Devens, a BOP medical facility in Ayer, Massachusetts. At present, FMC Devens has had eleven inmate deaths, and more than 375 confirmed inmate cases of COVID-19 and about 63 staff cases. FMC Devens has one of the highest rates of COVID-19 deaths among BOP facilities.

### II. Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a sentence if it determines that "extraordinary and compelling reasons warrant such a reduction." In addition to this finding, the court must also consider the sentencing factors described in 18 U.S.C. § 3553(a) and decide if a sentence reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Until recently, the courts looked to USSG § 1B1.13 for the "applicable policy statement" relative to what constitutes extraordinary and compelling circumstances when considering a request for compassionate release under

1

the statute. However, the Sixth Circuit recently held that USSG § 1B1.13 doesn't apply to cases where an imprisoned person files a motion for compassionate release. *United States v. Jones*, __ F.3d __ 2020 WL 6817488 (6th Cir. Nov. 20, 2020). In *Jones* noted that the current version of USSG § 1B1.13 pre-dates the procedural reforms of the compassionate release provisions set forth in the First Step Act of 2018 and therefore are no long "applicable" to consideration of a motion for compassionate release. *Jones*, 2020 WL 6817488, ** 7.

As the Sixth Circuit concluded, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."

In sum, a defendant seeking compassionate release must present extraordinary and compelling circumstances, must have § 3553(a)'s sentencing factors weigh in his favor, must not be a threat to others as determined by § 3142(g).

For the reasons that follow, the Court should conclude that Dr. Kafi meets the requirements for compassionate release and grant his motion.

### III. Discussion and Analysis

**A. Exhaustion of Administrative Remedies**

Through counsel, Dr. Kafi previously submitted his request to the Warden of FMC Devens asking that he be considered for compassionate release which request was denied. **Exhibit A**.

**B. Dr. Kafi presents "extraordinary and compelling" circumstances to warrant compassionate release under 18 U.S.C. § 3582(c).**

Under § 3582(c)(1)(A)(i), this Court has the authority to release an inmate premised upon "extraordinary and compelling reasons." While there are no clear guidelines for establishing such grounds, courts have applied this standard to COVID-related requests consistent with the CDC guidelines while accounting for both individual and institutional risk factors of which Dr. Kafi satisfies both.

Since beginning his incarceration, Dr. Kafi's mental health condition has deteriorated to the point that he was transferred to his current BOP medical facility at FMC Devens (he was previously housed at FCI Morgantown which isn't a medical facility). While housed at FCI Morgantown, Dr. Kafi was seen "at the request of psychology . . . because of increased cognitive impairment and affecting personal hygiene and self care" and the examiner noted that Kafi's "cognitive functions are impaired." (**Exhibit B-001**)(noting that Kafi

3

was experiencing "more difficulty in recall and non-compliance with medications.").

At FMC Devens, he has continued to have institutional issues that appear to be related to his disorganized thought process and inability to follow directions. See **Exhibit D-004** ("Having difficulties on his unit with certain behaviors including sleeping in the day, up all night, taking items out of the trash for use in meals, spitting and grunting, general hygiene. Please perform cognitive evaluation."); see **Exhibit D-005** (describing how "the unit officer spent quite a bit of time trying to get [Kafi] up and out of bed to get him down to the clinic. He refused to get out of bed)(further describing how Kafi "is a difficult cell mate . . his hygiene is poor, he does not communicate at all with his cell mates, he sleeps most of the day and then is up most of the night pacing, coughing, spitting, and grunting.").

At 72 years old and coupled with his medical conditions, Dr. Kafi is at extremely high risk for COVID-19. In particular, Dr. Kafi suffers from the following medical conditions:

- Type 2 diabetes mellitus (poorly controlled)(**Exhibit D003**);
- Hyperlipidemia;
- Major depressive disorder, recurrent;
- Anxiety disorder;

4

- Age-related cataract;

- Presbyopia;

- Essential (primary hypertension)(poorly controlled)(**Exhibit D003**);

- Aneurysms;

- Unspecified neurocognitive disorder;

- Dementia with behavioral disturbance;

- Prediabetes.

**Exhibit D006-08**;  **Exhibit B007-008; Exhibit C003-004.**

Dr. Kafi takes the following medications for his health conditions: Amlodipine, Atorvastatin, Labetalol, Lisinopril, Aspirin, and Paroxetine.

As the CDC explains, those at the highest risk of severe illness from COVID-19 are:

- people who are 65 years and older;

- people with poorly controlled underlying medical conditions, including most notably Type 2 diabetes, dementia, and/or "other neurological conditions;

- people who live in a nursing home or long-term care facility;

- people with diabetes;

Center for Disease Control and Prevention, "People With Certain Medical

5

Conditions" https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited 05/03/2021).

Dr. Kafi falls into several of these categories: he 72 years old; he suffers from type 2 diabetes which the BOP has documented as poorly controlled (**Exhibit D003**); he has hypertension, which the BOP has also documented as being poorly controlled (**Exhibit D003**), and suffers from a dementia-like neurological disorder that prevents rational, organized thoughts and behavior. Coupled with these facts, Dr. Kafi is confined in a prison facility where the virus spreads quickly and easily. Of his particular risk factors, it should be emphasized that Dr. Kafi's neurological deficits and his diabetes are perhaps the most dangerous of his risk factors.

As Dr. Jaimie Meyer, Assistant Professor of Medicine at Yale School of Medicine and Assistant Clinical Professor of Nursing at Yale School of Nursing in New Haven, Connecticut, notes in her attached declaration:

> Most people (80%) who become infected with COVID-19 will develop a mild upper respiratory infection but emerging data from China suggests serious illness occurs in up to 16% of cases, including death. Serious illness and death is most common among people with underlying chronic

> health conditions, like heart disease, lung disease, liver disease, and diabetes, and older age.

**(Exhibit E**, Declaration of Dr. Jaimie Meyer, ¶ 21, pg. 5).

As confirmed by both his PSR and BOP medical records, Dr. Kafi's medical conditions pose heightened risks of serious illness, including death, resulting from COVID-19 such that his instant request is both 'extraordinary' and 'compelling.' At present, there have been more than 400 confirmed cases of the virus in FCM Devens between inmates and staff and eleven inmates from the facility have died from the virus (one of the higher rates of inmate deaths among the BOP facilities in the country).

Defendant also suffers from hyperlipidemia and has long suffered from dementia-type neurological deficits that have affected nearly every aspect of his life. (**Exhibit B001**, **Exhibit C004**, **C001**, **D001, D004-005**, excerpts of medical records)[1]. Defendant also suffers from Type 2 diabetes and hypertension both of which have been poorly controlled while incarcerated by the BOP (**Exhibit D003**).

---

[1] In his sentencing memorandum filed under seal, Defense counsel described in extensive detail Dr. Kafi's diminished mental capacity and neurological deficits that contributed, in large part, to his current incarceration. Defense counsel also submitted numerous letters, including one from his son, as part of the sentencing record describing Dr. Kafi's bizarre behavior over the years.

7

When individuals cannot fully isolate themselves, the Federal Government, and <u>all</u> public health authorities urge – and in many instances, mandate – "social distancing," to save lives and slow the spread of COVID-19. According to the Centers for Disease Control and Prevention (CDC), social distancing "means remaining out of congregate settings, avoiding mass gatherings, and maintaining distance (approximately 6 feet or 2 meters) from others when possible." See www.CDC.gov. But social distancing is impossible to accomplish in a prison, which was not designed or built to provide individual prisoners this amount of individual space.

As the Court is no doubt aware, we are living now in extraordinary and dangerous times. The spread of the COVID-19 virus across the country threatens us with unprecedented dangers. We have been told by the authorities to stay home, stay safe, and not be closer than six feet to anyone. Older persons, persons with weakened immune systems, and those with underlying health problems like Defendant need to take ever greater precautions because of the dangerous aspects of this particular virus.

There is also ample evidence from which to conclude that Dr. Kafi's mental health/neurological conditions have substantially diminish his ability to provide self-care within the environment of a correctional facility. See **Exhibit D001** ("Hair is unkempt and mask is not clean and is ill fitting"); see

8

also **Exhibit C001** ("KAFI needs almost continuous reminders to wear his face mask appropriately."). As Dr. Jaimie Meyer, Assistant Professor of Medicine at Yale School of Medicine and Assistant Clinical Professor of Nursing at Yale School of Nursing in New Haven, Connecticut, notes in her attached declaration:

> The risk posed by infectious diseases in jails and prisons is significantly higher than in the community, both in terms of transmission, exposure, and harm to individuals who become infected.
>
> Globally, outbreaks of contagious diseases are all too common in closed detention settings and are more common than in the community at large. Prisons and jails are not isolated from communities. Staff, visitors, contractors, and vendors pass between communities and facilities and can bring infectious diseases into facilities. Moreover rapid turnover of jail and prison populations means that people often cycle between facilities and communities. People often need to be transported to and from facilities to attend court and move between facilities. Prison health is public health.

**(Exhibit E**, Declaration of Dr. Jaimie Meyer, ¶¶ 7-8, pg. 2).

Addressing these institutional concerns, Judge Leitman concluded in another case that a defendant would be "unable to provide self-care within the environment of" the federal prison because he "is unable to practice effective social distancing and hygiene to minimize [his] risk of exposure." Case No. 2:13-cr-20653-MFL-MAR ECF No. 54, PageID.812-813 Order, (citing

9

*United States v. Colvin*, No. 19-179, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020)(noting that "the continued presence of the virus at the facility suggests it presents an ongoing risk, especially to vulnerable prisoners such as White."). To no less of a degree, the same concerns are present here where the record is replete with instances of how Dr. Kafi isn't able to provide self-care due to both his neurological disorder and his environment.

The situation facing Dr. Kafi is dire and poses both Eighth Amendment and Due Process concerns. Should Dr. Kafi not be released to home confinement, he will likely be exposed to a life-threatening virus. This would amount to cruel and unusual punishment that need not be inflicted upon a non-violent, non-dangerous offender with medical conditions such as Defendant's.

### C. § 3553(a) sentencing factors

There is also no indication that Dr. Kafi poses any harm or threat to the public. Defendant was released pre-trial on an unsecured bond. ECF No. 26 and 27, and PSR ¶ 2, pg. 4. Dr. Kafi had no criminal history apart from a 2008 operating while impaired charge. PSR ¶ 32, pg. 9. In fact, during sentencing, the Court noted that "[g]iven Mr. Kafi's age and that he no longer has the licenses that would allow him to engage in this conduct and given his mental health issues, the Court believes that he does not pose a danger to the public." ECF No. 99, PageID.743 Sentencing Trans. pg. 35:9-12.

10

Nor has Defendant presented with any institutional concerns or problems since his incarceration with the BOP that would give the Court any pause for concern. To the extent that the government may suggest that Dr. Kafi may pose a danger relative to his status as a licensed physician, it should be noted that Dr. Kafi already agreed to voluntarily surrender his medical license so that he can no longer perform as a health care professional. See ECF No. 99, PageID.718 Sentencing Trans pg. 10:3-16. Dr. Kafi is also housed at one of the lowest security medical facilities.

As set forth herein, the record evidence supports a finding that there are no facts from which to conclude that Dr. Kafi poses any threat to the public upon his release. At the same time, his release would ease the burden and strain on valuable BOP resources and staffing as this pandemic continues to stretch across our communities.

As to the other sentencing factors, the Court should consider Dr. Kafi's relevant personal characteristics most notably his vulnerability to COVID-19 due to his health conditions and his inability to provide self-care within the BOP as a result of his neurological disorder. Dr. Kafi has no prior criminal record other than for a minor driving while impaired offense, and his release to home confinement would still serve the goal of imposing sufficient punishment under § 3553(a)(2)(A). *See also* 2:13-cr-20653-MFL-MAR ECF

11

No. 54, *United States v. White*, (E.D. Mich. May 20, 2020)(applying the § 3553 factors and finding that, on balance, defendant's health conditions weighed heavily in favor of compassionate release while still serving the goal of general deterrence, sufficient punishment, and public safety).

Additionally, Dr. Kafi's need for mental health treatment is substantial and hasn't been met by the BOP. As this Court noted during sentencing, "[w]hat the Court does believe distinguishes him from other doctors that have been before me and before other judges in the court is probably the significant mental health issues that he has and that are well documented[.] Maybe that's part of the diminished capacity. [] The Court does believe and will give you credit for the mental health issues that you have that certainly are in need of treatment and that may not get the attention that they warrant from the Bureau of Prisons, and that may be a reason to sentence you outside the Guidelines so that you can take advantage of treatment options that might be available outside of the Bureau of Prisons." ECF No. 99, PageID.744 Sent. Trans. pg. 36:5-20. Dr. Kafi's records from the BOP confirm what the Court noted, that is, Dr. Kafi isn't able to get the type of intense treatment that he needs to address his serious mental health issues which militates in favor of his instant Motion for Compassionate Release.

The government may oppose Dr. Kafi's instant request on the basis that Kafi was offered – but declined – to be vaccinated by the BOP. This fact shouldn't be held against Defendant for several reasons. First and foremost, Dr. Kafi experienced a severe and near deadly reaction to the flu virus a few years ago that resulted in his diagnosis of Guillain-Barre syndrome. PSR ¶ 47, pg. 11. Dr. Kafi's reaction was so severe as to cause him partial paralysis which continues, in part, at present. *Id.* Dr. Kafi's brother, the former head of the cardiology department of a local hospital, has also indicated that it was is advice to his brother not to get the vaccine given the (nearly deadly) severity of Defendant's prior reaction to the flu vaccine which required Defendant to undergo three separate surgeries (**Exhibit F**).

Additionally, the manufacturer of the vaccine provides a specific warning that people like Dr. Kafi who have a history of allergies should not take the vaccine. https://www.fda.gov/media/144414/download (Pfizer Fact Sheet, pg. 1-3)(last visited 3/4/21). See **Exhibits B006, C002, and D011** (listing Defendant's allergic reaction to flu vaccine in BOP medical records under "Allergies."). Given these facts, and most importantly his history of allergies, Dr. Kafi seemingly made the choice of declining the vaccine at this point in time.

Finally, the Court should consider the issue of sentencing disparity if

his request is denied. *See United States v. Presley*, 547 F.3d 625 (6th Cir. 2008)(noting that sentencing disparity between codefendants is "a factor which was fully within the district court's discretion to consider."). In particular, one of Dr. Kafi's codefendants, Cheryl Ozoh, was sentenced 42 months which sentence was reduced to 13 months time-served upon her motion for compassionate release. See, ECF No. 95. Given the relative culpability of Dr. Kafi compared to that of Defendant Ozoh, Kafi's release to home confinement would not produce an unwarranted sentencing disparity but rather the opposite. *See* § 3553(a)(6); *see also* ECF No. 99, PageID.733 Sentencing Trans. pg. 25:16-22 (defense counsel commenting that Cheryl Ozoh discussing how Dr. Kafi "was being taken advantage of[.]").

Dr. Kafi also has a supportive brother and other family and friends who will provide for his needs if released early by the Court. If released, Dr. Kafi will reside in his family home where he lived and took care of his mother for many years until her death (**Exhibit F**). Dr. Kafi's brother has indicated he (and other family members) will provide for Dr. Kafi's needs both financial and otherwise.[2] In addition, Dr. Kafi will have Medicare for his medical-related treatment and care.

---

[2] After Dr. Kafi's voluntary forfeiture of money and assets, he was still left with adequate funds in a retirement account that is available to him for personal, living, and medical expenses.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Defendant Dr. Kafi respectfully requests that the Court issue an Order for immediate compassionate release and/or reduction in his sentence.

Respectfully submitted,

Law Office of Michael R. Dezsi, PLLC

Dated:  May 4, 2021    */s/Michael R. Dezsi*
Counsel for Defendant
615 Griswold St., Suite 711
Detroit, MI  48226
(313) 879-1206
mdezsi@dezsilaw.com
P64530

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of May 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

*/s/ Michael Dezsi*
Law Office of Michael R. Dezsi, PLLC
615 Griswold St, Suite 711
Detroit, MI 48226
mdezsi@dezsilaw.com
P64530

15