UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                          Case No. 17-20432
                                          Honorable Victoria A. Roberts

ALEX KAFI,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR COMPASSIONATE RELEASE [ECF No. 100]**

**I.    INTRODUCTION**

This matter is before the Court on Alex Kafi's ("Kafi") motion for compassionate release. [ECF No. 100]. Kafi is 72 years old and suffers from multiple medical conditions including: Type 2 diabetes, Hyperlipidemia, and neurocognitive disorders including dementia. Kafi asks the Court to grant him compassionate release due to his age, these medical conditions, the COVID-19 pandemic and potential unwarranted sentencing disparities.

The Court **GRANTS** Kafi's motion.

## II. BACKGROUND

Kafi pled guilty to conspiracy to distribute oxycodone in violation of 21 U.S.C. § 846. On July 25, 2019, Kafi began serving his 60-month sentence. To date, he has served over 22 months. He is incarcerated at FMC Devens in Ayer, Massachusetts. His projected release date is November 23, 2023.

Kafi filed a motion for compassionate release on May 5, 2021. The government opposes Kafi's release.

## III. DISCUSSION

Compassionate-release motions require a "three-step" inquiry:

> (1) the Court must "find that extraordinary and compelling reasons warrant a sentence reduction";
>
> (2) the Court must "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and;
>
> (3) finally, the Court must "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)."

*United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021). "If each of these requirements [is] met, the district court may reduce the term of imprisonment. 18 U.S.C. § 3582(c)(1)(A)." District courts have "full discretion to define 'extraordinary and compelling' without consulting the

policy statement § 1B1.13." *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020).

### A. Kafi Exhausted Administrative Remedies

Kafi exhausted his administrative remedies set forth in 18 U.S.C. § 3582(c)(1)(A). He submitted a request to the Bureau of Prisons ("BOP") for compassionate release on February 25, 2021. Over 30 days have lapsed since that time.

### B. Extraordinary and Compelling Reasons Exists

Kafi says extraordinary and compelling reasons exists for his release because he has a high risk of contracting COVID-19 due to his age and medical conditions, and he is at a higher risk of developing a severe illness from COVID-19. Among other things, Kafi says he suffers from Type 2 diabetes, hypertension, hyperlipidemia and dementia with behavioral disturbance.

The government largely concedes that Kafi's medical conditions along with his age would typically combine to satisfy the extraordinary and compelling reasons requirement for compassionate release; however, it says that Kafi no longer presents an "extraordinary and compelling reason" because he received one dose of the Moderna vaccine for COVID-19 on May 6, 2021. The effectiveness of even one of these doses, the

3

government says, has already been noted by multiple scientific studies and courts alike.

Kafi's medical conditions place him at increased risk of severe illness due to COVID-19. According to the Centers for Disease Control and Prevention (CDC), those at the highest risk of severe illness from COVID-19 are:

- people who are 65 years and older;
- people with poorly controlled underlying medical conditions, including most notably Type 2 diabetes, dementia, and/or "other neurological conditions;
- people who live in a nursing home or long-term care facility; and
- people with diabetes;

Center for Disease Control and Prevention, "*People With Certain Medical Conditions*" https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-with medicalconditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higherrisk.html (last visited 06/03/2021). Kafi satisfies many of these conditions.

As of this writing, Kafi received his first dose of the two-dose Moderna vaccine on May 6, 2021. One vaccination shot decreases the likelihood of severe illness from COVID-19 but does not eliminate it completely. *See* https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm. A recent CDC study of vaccinated health-care workers concluded that a single dose of Moderna's Covid-19 vaccine was 80% effective in preventing coronavirus infections while two doses increase the efficacy rate over 90%. *Id*.; *see also* Center for Disease Control and Prevention, *"Moderna COVID-19 Vaccine Overview and Safety"* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html ("[b]ased on evidence from clinical trials, the Moderna vaccine was 94.1% effective*")*(last visited 6/4/2021).

Several courts have granted compassionate release to vulnerable inmates after receiving one dose of a two-dose vaccine. *See United States v. Parish*, 2:07-CR-578-RMG, D.E. 158 at 4-5 (D.S.C. Mar. 17, 2021) (granting CR based on COVID-19 risk factors, notwithstanding receipt of first vaccine dose); *United States v. Hernandez Sandoval*, CR14-5105 (W.D. Wa. Feb. 22, 2021) (granting CR to defendant with kidney disease, transplant, and diabetes who received one dose of vaccine and recovered from COVID-19).

Although Kafi received one dose of the Moderna vaccine, the Court concludes, out of an abundance of caution, that his medical conditions at this time are extraordinary and compelling.

### C. The § 3553(a) Sentencing Factors Do Not Make Release Inappropriate

Because Kafi exhausted his administrative remedies, and his medical conditions and age constitute an extraordinary and compelling reason for compassionate release, the only issue is whether the § 3553(a) factors weigh in favor of granting release. *See United States v. Kincaid*, 802 Fed. Appx. 187, 188 (6th Cir. 2020). They do.

The government says that the history and characteristics, length of time served, the need for the sentence imposed to afford adequate deterrence to criminal conduct, and the need to protect the public all weigh in favor of denying Kafi's request for release.

Kafi says that he is not a danger, that the length of time served is not dispositive to the Court's analysis of the § 3553(a) factors and that the Court should consider unwarranted sentencing disparities between Kafi and his co-defendant Cherly Ozoh ("Ozoh"). On October 28, 2020 the Court granted compassionate release to Ozoh reducing her 42-month sentence to a period of time served. [ECF No. 95, PageID.697]. Kafi claims that his culpability in the criminal scheme is lesser than that of Ozoh and

6

that Kafi's release to home confinement would not produce an unwarranted sentencing disparity.

Several of the § 3553(a) factors weigh in favor of Kafi's release. The government produced no institutional disciplinary record for Kafi. Kafi is currently housed at one of the lowest security medical facilities. He has no criminal history apart from a 2008 operating while impaired charge. Significantly, because Kafi already agreed to voluntarily surrender his medical license and can no longer perform as a health care professional, the likelihood of recidivation is low. Although Kafi did display a lack of respect for the law while perpetrating this scheme, the § 3553(a) factors weighing in favor of release outweigh the factors weighing against.

Kafi's release plan includes returning to his family home where his brother will provide for Kafi's needs both financial and otherwise. Additionally, Kafi has adequate funds in a retirement account available to him for personal, living, and medical expenses.

The applicable § 3553(a) factors weigh in favor of granting release.

## IV. CONCLUSION and RELIEF

The Court **GRANTS** Kafi's request for compassionate release. [ECF No. 100].

Under 18 U.S.C. § 3582(c)(1), the Court "may reduce [Kafi's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)." 18 U.S.C. § 3582(c)(1)(A).

The Court **REDUCES** Kafi's term of prison to **TIME SERVED**.

Because Kafi is a non-violent offender who does not pose a risk to the community, and because the probation department's resources are strained due to COVID-19, the Court **VACATES** the 24 months of supervised release it previously imposed. Instead, the Court imposes an amended 12-month term of supervised release.

Defendant is released on the following conditions – these conditions of supervised release become effective immediately upon release from the BOP:

**MANDATORY CONDITIONS**

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

4. You must cooperate in the collection of DNA as directed by the probation officer.

**STANDARD CONDITIONS OF SUPERVISION**

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4. You must answer truthfully the questions asked by your probation officer.

5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation

officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been

convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## SPECIAL CONDITIONS OF SUPERVISION

1. Upon release from FMC Devens, Kafi **must** quarantine at his family residence for 14 days.

2. The defendant shall participate in a program approved by the probation department for substance abuse, which may include testing to determine if the defendant has reverted to the use of drugs or alcohol.

3. The defendant shall submit to a psychological/psychiatric evaluation as directed by the probation officer, if necessary.

4. The defendant shall participate in a program approved by the probation department for mental health counseling, if necessary.

5. The defendant shall take all medications as prescribed by a physician whose care he/she is under, including a psychiatrist, in the dosages and at the times proposed. If the defendant is prescribed a medication, he/she shall take it, and the defendant shall not discontinue medications against medical advice.

**IT IS ORDERED**.

s/ Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: June 4, 2021